IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:08CR00034-01 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COREY D. TURNER, | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |

Before me is the Defendant's Motion to Dismiss the Indictment [Docket 20]. The
Government has filed a response to the motion and the arguments contained in the Defendant's
supporting brief. I have reviewed the Defendant's legal arguments, the Government's response,
and relevant legal precedence. For the reasons stated below, I will **DENY** the Defendant's
motion. To summarize my holding, I find:

A. The straight forward statutory interpretation and legal analysis from sister courts across
the country do not require states to fully implement Sexual Offender Registration and
Notification Act ("SORNA") legislation before the law is enforceable.

B. The Western District of Virginia is the proper venue because it is where Mr. Turner failed
to update the registry, and crimes of omission lay in the venue where the omission
occurred. North Carolina is another possible venue since the defendant failed to register
there, and when more than one venue is involved, either can assert venue.

C. The Attorney General's Interim Rule will be upheld because the Administrative
Procedure Act's "good cause" exception to the general rule (requiring a 30 day public
comment period before implementation) was accurately asserted. It was necessary to

1

immediately implement the rule to protect potential victims and uphold public safety, which grossly outweighed the need to follow regulatory procedure.

D. SORNA is constitutional under the Commerce Clause because it fulfills the first two prongs of the <u>Lopez</u> test (Mr. Turner was a person moving in interstate commerce and he used instrumentalities of interstate commerce to relocate in North Carolina), so no analysis is needed to determine the law's substantial effect on interstate commerce.

E. Congress did not abdicate its constitutional role by delegating authority to the Attorney General. The Attorney General was given clear guidance, limitations, and purpose to enact enforcement regulations for SORNA.

F. SORNA does not violate due process because Mr. Turner was on actual notice of his duty to re-register with Virginia if he was to relocate to another state after signing a Virginia State Police re-registration form detailing his obligations after SORNA was implemented.

G. There are no *ex post facto* penalties in SORNA because the law seeks to ensure a civil regulatory obligation is fulfilled by sex offenders. It does not punitively punish the previous sex offenses, but punishes contemporary omissions of the registration requirement.


I.    **STATEMENT OF FACTS AND PROCEDURAL HISTORY**


<u>Mr. Turner</u>

The underlying facts of this case are uncontested. On March 18, 1998, Corey D. Turner ("the Defendant") was convicted of rape in Henry County, Virginia. The Defendant first registered as a sex offender pursuant to § 9.1-900 *et seq.* (the Sex Offender and Crimes Against Minors Registry), on July 30, 1998. The Defendant was initially placed on probation on

2

November 16, 2001, but his probation was revoked on December 14, 2005. He was released on June 13, 2006. At this time he was required to register as a sex offender under § 9.1-901 and to re-register with the Virginia State Police every 90 days from the date of initial registration. In addition, the Defendant was required to re-register within three days of changing his address within Virginia. If the he moved to another state, he was required to register in person where he previously registered within ten days prior to his change of address. Va. Code Ann. § 9.1-903(D).

From 2005 to July 2007, the Defendant re-registered with the State Police (fulfilling Virginia's registration requirements), providing a home address of 846 New York Avenue, Martinsville, Virginia 24112. On August 28, 2007, the defendant submitted a signed State Police re-registration form, which listed his new address as 918 Myrtle Road, Martinsville, Virginia 24112. In signing the form, the defendant acknowledged his reporting obligations if he were to change addresses within or outside Virginia.

On September 30, 2007, the defendant was charged with malicious wounding and use of a firearm which occurred in Martinsville. On October 17, 2007, the defendant's parole officer went to his listed address and was advised that he no longer resided there. On October 23, 2007, the state issued an arrest warrant for Turner charging him with failing to re-register as a sex offender. In March 2008, the victim of the malicious wounding died from his wounds. Consequently, a murder warrant was issued for the defendant on April 1, 2008.

On April 22, 2008, the U.S. Marshalls Service developed information that the Defendant was residing with his girlfriend in Burlington, North Carolina and the Defendant was subsequently arrested in North Carolina and extradited back to Virginia. At the time he was

3

arrested, Turner had not re-registered in North Carolina nor had he updated his registration in Virginia. The Defendant has since been acquitted of the state murder charges.

Background of Federal and Virginia Sex Offender Law

The Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (commonly referred to as "Megan's Law", 42 U.S.C. § 14071) was enacted in 1994, and provided national sex offender standards for the states to adopt within three years or face loss of federal funding. 42 U.S.C. § 14071(g). In conjunction with Megan's Law, Congress also established a federal criminal penalty which provides a maximum sentence of one year incarceration for those who fail to register under this law. 42 U.S.C. § 14072(i). In compliance with Megan's Law, Virginia, along with every state, established a sex offender registration program. See Va. Code Ann. § 9.1-900. In 1997, Virginia established a state criminal penalty, separate and apart from the federal penalty, which provides a maximum punishment of twelve months to five years incarceration for a first failure to register. See Va. Code Ann. § 18.2-472.1.

Sexual Offender Registration and Notification Act ("SORNA")

On July 27, 2006, Congress passed the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act"). Title I of the Adam Walsh Act, known as SORNA, was enacted to close the gaps in the network of state sex offender registration laws that existed despite prior efforts at the state and national level to implement an effective registration system. SORNA Interim Rule, 72 FR 8894, 2007 WL 594891. The ultimate goal of SORNA is to make sex offender registration obligations comprehensive and real – even for those sex offenders who would rather migrate across state lines than continue to register.

SORNA sets national standards for the sex offender registration systems of jurisdictions, it does not require that any jurisdiction adopt such standards, and it does not create a federally mandated national sex offender registry. See, 42 U.S.C. §16901 *et seq.* Rather, much like Megan's Law, SORNA encourages jurisdictions to meet its standards by conditioning 10% of federal Byrne Grant funding on a jurisdiction's substantial compliance with those standards by July 2009. 42 U.S.C. § 16924-25.

Since one of the fundamental standards that SORNA encourages jurisdictions to incorporate is that all sex offenders[1] register, SORNA also encourages jurisdictions to incorporate a standard for sex offenders to have notice of their registration obligations. To substantially comply with SORNA, a jurisdiction must explain these obligations to sex offenders and must ensure that sex offenders sign a form acknowledging their registration obligations, if possible, prior to a sex offender's release from custody or immediately after sentencing. 42 U.S.C. § 16917. SORNA's standard requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. §16913(a). In addition, a sex offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person" and update his or her registration information "in at least 1 jurisdiction involved." 42 U.S.C. § 16913(c).[2]

---

[1] Under SORNA, "the term 'sex offender' means an individual who was convicted of a sex offense." 42 U.S.C. § 16911. Examples of sex offenses provided in 42 U.S.C. § 16911 include sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity, abusive sexual contact, use of a minor in a sexual performance, solicitation of a minor to practice prostitution, and production or distribution of child pornography.

[2] Section 113 provides in full:

    (a) In general-
        A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the

SORNA does not directly impose federal registration obligations on convicted state sex offenders who do not travel in interstate commerce. However, SORNA contains a federal law enforcement provision called the federal failure to register ("FFR") statute, 18 U.S.C. § 2250, that seeks to assist jurisdictions by regulating the interstate migration of non-compliant sex offenders. Section 2250 complements the national registration standard by targeting those convicted state sex offenders who travel in interstate commerce and fail to register or update their registration information.[3]

---

jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration-
   The sex offender shall initially register-(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current-
   A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section-
   The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply-

   Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

[3] Section 2250 states whoever:

   (1) is required to register under the [SORNA];

   (2)      (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of

An important section of SORNA to this case concerns those sex offenders convicted of offenses occurring before the implementation of SORNA. 42 U.S.C. 16913(d).[4] With concerns about the retroactivity of Section 2250, the Department of Justice ("DOJ") published an interim rule in the Federal Register on February 28, 2007, stating, "The requirements of [SORNA] apply to *all* sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." SORNA Interim Rule, 28 C.F.R. § 72.3 (emphasis added).[5] The SORNA Interim Rule was made effective immediately, without pre-publication notice and comment period because the Attorney General determined it was within the "good cause" exception to delineate the retroactive application of SORNA, and to commence enforcement of Section 2250 in order to protect potential sex crime victims by identifying and locating missing sex offenders from their registration jurisdictions.[6]

Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the [SORNA];

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

[4] See, Footnote 2 *supra.*

[5] The examples provided by the rule are instructive, especially Example 2:

A sex offender is convicted by a state jurisdiction in 1997 for molesting a child and is released following imprisonment in 2000. The sex offender initially registers as required, but disappears after a couple of years and does not register in any other jurisdiction. Following the enactment of the Sex Offender Registration and Notification Act, the sex offender is found to be living in another state and is arrested there. The sex offender has violated the requirement under the Sex Offender Registration and Notification Act to register in each state in which he resides, and could be held criminally liable under 18 U.S.C. 2250 for the violation because he traveled in interstate commerce.

28 C.F.R. § 72.3

[6] The rule:

[I]s necessary to eliminate any possible uncertainty about the applicability of the Act's requirements – and

Procedural Background

On May 21, 2009, a one count superseding indictment[7] was returned by the Grand Jury, charging the defendant with a violation of 18 U.S.C. § 2250(a), traveling in interstate or foreign commerce between on or about October 23, 2007 and April 22, 2008, and knowingly failing to register or update a registration as a sex offender as required by SORNA.  Superseding Indictment of Cory D. Turner [Docket 24].  The indictment was filed well after the enactment of SORNA and the DOJ Interim Rule.  Upon receipt of the Defendant's motion to dismiss, this court set a hearing date for May 26, 2009 at 10:00 a.m.  A date has been set to hear Mr. Turner's guilty plea on June 18, 2009 at 10:00 a.m. in Danville.


II.      ANALYSIS

The Defendant makes seven arguments to support his motion to dismiss the indictment. Each one is addressed below.

---

related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required – to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA §102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay the effectiveness of a final rule.

72 Fed. Reg. 8894, 8896-8897 (2007).

[7] The original indictment was returned by the Grand Jury on Oct 16, 2008.

A.  SORNA's Registration Requirements Apply before Virginia has Implemented a
    Comprehensive Regulatory System

The Defendant argues, under the plain language of the statute, that Congress did not make SORNA applicable to sex offenders who cross state lines and fail to register before a comprehensive regulatory system has been implemented by the states. Def.'s Mot. to Dismiss at 10, United States v. Turner, No. 4:08CR00034-01 (W.D. Va. argued May 26, 2009) ("Def.'s Mot."). The Defendant points out that Virginia has not implemented a SORNA registration mechanism and therefore he should not be federally punished for failure to comply with Virginia's pre-existing registration obligations. Id.

The Defendant can be charged under SORNA even though Virginia has not fully implemented all SORNA standards. SORNA's language states sex offenders must register and update their registration in accordance with the registration requirements every state has already implemented under Megan's Law. See, 42 U.S.C. § 16913.

SORNA's requirements are impressive, and it is undisputed that Virginia has not implemented SORNA by the time of the Defendant's indictment, or to date – indeed, there is nothing in the record indicating any state has.[8] However, in response to the same challenge in United States v. Utesch the court held:

> To be sure, the registration requirements in [most states] do not meet all of SORNA's requirements. But defendant is not being prosecuted for providing less information than SORNA requires; he is being prosecuted for failing to register at all. The fact that the states have not yet met their obligations under SORNA (they have at least until July 27, 2009, to do so) is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act. It was clearly possible for the Defendant to comply with SORNA.

---

[8] Since it is stipulated that Virginia has not implemented a SORNA regulatory system, a discussion of the specific requirements of the system is immaterial.

No. 2:07CR105, 2008 WL 656066 at *8 (E.D.Tenn. March 6, 2008).  In United States v. Gould,

the court held that SORNA's differences in registration requirements to that of the pre-existing

Maryland law did not exempt the defendant from a duty to register, despite Maryland's failure to

implement SORNA.  526 F. Supp. 2d 538, 542 (D. Md. 2007).  As further explained in United

States v. Talada:

> [N]othing in SORNA or its guidelines indicates that a jurisdiction's failure to
> comply with SORNA relieves offenders of the obligation to register in that
> jurisdiction.  Instead, Congress instructed the Attorney General to "specify the
> applicability of the requirements of [the Act] to sex offenders convicted before
> [its enactment] or its implementation in a particular jurisdiction." 42 U.S.C. §
> 16913(d).  By stating that "[t]he requirements of the [SORNA] apply to *all* sex
> offenders," 28 C.F.R. § 72.3 (emphasis added), the Attorney General announced
> that offenders are required to register in jurisdictions where SORNA has not been
> implemented. See United States v. Dixon, 551 F.3d 578, 582 (7th Cir. 2008).

No. 5:08CR00269, 2009 U.S. Dist. LEXIS 47630, at *12-13. (S.D. W. Va. June 5, 2009) [9]

Indeed, a number of district courts[10] have reached similar conclusions that SORNA's registration

requirements are applicable to all sex offenders regardless of whether the Act has been

implemented in a particular jurisdiction.

Virginia has had a sexual offender registry for a number of years, both before and after

the enactment date of SORNA. Defendant's claim ignores the requirement that as a resident of

Virginia, Virginia law required him to register as a sex offender prior to SORNA. See Va. Code

Ann. § 9.1-901 *et seq*. There was a procedure in place in Virginia for the Defendant to register

and update that registration, and the Defendant initially complied with that procedure, however

he did not update his registration upon leaving Virginia.  SORNA's language states sex offenders

---

[9] See also, Footnote 5, *supra*.

[10] The Government cites unpublished cases from the District of Rhode Island, the Northern District of Indiana, the Northern District of Georgia, the District of Maryland, and the Middle District of Louisiana.  See Resp. to Def.'s Motion by USA at 8, United States v. Turner, No. 4:08CR00034-01 (W.D. Va. argued May 26, 2009) ("Govt.'s Resp.")

must register and update their registration in accordance with the registration requirements every state has already implemented under Megan's Law. 42 U.S.C. § 16913.

To hold SORNA does not apply because Virginia has not enacted all of its standards prior to the statute's deadline would nullify Congress' intent to safeguard potential victims from sex offenders until after the July 2009 deadline. See 28 C.F.R. § 72.3 and 72 Fed. Reg. 8894, 8896-97 (2007). Accepting the Defendant's argument would allow countless sex offenders to skirt registration by simply relocating to a neighboring jurisdiction.

SORNA is enforceable because based on the statutory analysis of Virginia's preexisting registration requirement, the widespread acceptance of its applicability by federal courts across the country, the law and regulatory intent, and the public policy implications. Therefore, I hold the Defendant is subject SORNA's application.


B.  The Western District of Virginia is the Proper Venue

The Defendant argues the Middle District of North Carolina is the proper venue rather than the Western District of Virginia because the alleged offense occurred in North Carolina where the Defendant resided at the time of the alleged offense. Def.'s Mot. at 14.

The Western District of Virginia is the proper venue. Venue lies in the state and district where the crime is alleged to have occurred. Travis v. United States, 364 U.S. 631, 634 (1961), United States v. Bowens, 224 F.3d 301, 308-09 (4th Cir. 2000), see also F. R. Crim. P. 18. In offenses of omission, venue lies where the defendant was supposed to have taken an action that he failed to take. Johnston v. United States, 351 U.S. 215, 221-22 (1956); United States v. Murphy, 117 F.3d 137, 140 (4th Cir. 1997). If the crime consists of distinct parts occurring in different places, venue is proper where any part of the crime occurred. United States v.

Case 4:08-cr-00034-JLK   Document 32   Filed 06/12/09   Page 11 of 25   Pageid#: 122

Lombardo, 241 U.S. 73, 77 (1916), see also 18 U.S.C. § 3237(a) (any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed).

According to 42 U.S.C. § 16913(a), a sex offender must "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." In addition, a sex offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person" and update his or her registration information "in at least 1 jurisdiction involved." 42 U.S.C. § 16913(c). Virginia law mandates a sex offender to "register in person with the local law enforcement agency where he previously registered within 10 days prior to his change of residence" (Va. Code Ann. § 9.1-903(D)).

The superseding indictment alleges the defendant knowingly failed to register "or update a registration" as a sex offender. See Superseding Indictment as to Corey D. Turner [Docket 24]. The defendant traveled in interstate commerce and knowingly failed to register or update his registration as required by SORNA. Specifically, he failed to update his registration in Virginia, the state he left, and failed to register in North Carolina, the state he traveled to. Since the defendant failed to re-register in his new state of residence (North Carolina), his previous state of residence (Virginia) remained his nominal residence according to the sex offender registries. United States v. Roberts, No. 6:07-CR-70031, 2007 WL 2155750 at *3 (W.D.Va. July 27, 2007).

The Defendant's failure to update his registration was an offense which occurred in Virginia, therefore Virginia is a "jurisdiction involved" for the purposes of 42 U.S.C. § 16913(a). It is immaterial to answer if SORNA mandates registration in the new jurisdiction in addition to

updating the old jurisdiction; in this case, the Defendant did neither. SORNA only requires that an offender "appear in person in at least one jurisdiction involved pursuant to subsection (a)" to change the registration. 42 U.S.C. § 16913(c). Therefore, venue is proper in both Virginia and North Carolina.

C.  DOJ Interim Rule Accurately Asserted the "Good Cause" Exception to the Administrative Procedure Act ("APA")

The Defendant argues the Attorney General's Interim Rule, issued on February 28, 2007, did not comply with the APA's publication and public comment period requirements or the APA's "good cause" exception, and therefore SORNA cannot be enforceable. Def.'s Mot. at 17-18. The APA addresses rule-making by agencies. Subsection (d) of the APA provides that thirty days prior to the effective date of a rule, publication and service must be effectuated. 5 U.S.C. § 553(d). The "good cause" exception is available when the agency finds, and expresses the finding in a brief statement of reason in the rule, that notice and public comment are impracticable, unnecessary, or contrary to the public interest). 5 U.S.C. § 553(b)(3)(B); see also, 5 U.S.C. § 553 (d)(3). The Defendant's argument hangs on the contention that the exception was not properly asserted because the rule was not an emergency situation, since every state already – under Megan's Law - adequately protected the public against sex offenders who fail to register or update their registration. Def.'s Mot. at 18-20.

The interim rule is enforceable because it was correctly made immediately effective in accordance with the APA's "good cause provision." "The notice and comment requirement could be deemed contrary to the public interest if it impedes timely implementation of a statute as specifically required by that statute." Talda, No. 5:08CR00269, 2009 U.S. Dist. LEXIS 47630,

at *40. (S.D. W. Va. June 5, 2009) (<u>citing</u> <u>United States v. Santana</u>, 584 F. Supp. 941, 954 (W.D. Tex. 2008)).

Reliance on the exception served important societal goals by providing certainty in enforcement and protecting public safety.  <u>See</u> 72 Fed. Reg. 8894, 8896-8897 (2007).[11]  The Seventh Circuit in <u>Dixon</u> soundly classified the APA violation claim against the interim rule as "frivolous."  <u>United States v. Dixon</u>, 551 F.3d 578, 583 (7th Cir. 2008).  In the Fourth Circuit, the District of Maryland upheld the interim ruling stating:

> Delaying implementation of the Interim Order to meet the formal rulemaking requirements of the APA would be contrary to public interest. The DOJ's valid concern for public safety, legal certainty, and swift implementation of the rule was adequately justified in its interim order.  Moreover, DOJ has since issued proposed guidelines that are open to the formal public notice and comment review period.

<u>United States v. Gould</u>, 526 F. Supp.2d 538, 546 (D.Md 2008).  Indeed, every court that has considered the issue of the APA in the context of SORNA has found that the Attorney General demonstrated the "good cause" necessary to waive the notice and comment period.[12]

In this case, the Attorney General correctly utilized the APA's "good cause" exception by clearly stating its sound reasoning in the Federal Register. <u>See</u> 72 Fed. Reg. 8894, 8896-8897 (2007).  It defies logic and good sense to contend the regulation waiting period would not dangerously affect public safety, as sex offenders would be afforded a three year window (from SORNA's July, 2006 enactment until the states' July 2009 deadline) to "lose" themselves under the various state and local registration regimes.  Put simply, the Defendant's argument that state laws, under Megan's Law, sufficiently protected the public does not recognize the problem that

---

[11] The Attorney General correctly followed the APA's "good cause provision," stating its sound reasoning in the Federal Register.  <u>See</u> Footnote 6, *supra*,

[12] The Government cites numerous District Court opinions supporting this conclusion.  Govt'.s Resp. at 14.

SORNA addresses – interstate movement of sex offenders. Congress determined that the existing registration and enforcement statutes were not adequately safeguarding the public, so the very reason SORNA and the Interim Rule were enacted was to make these laws more effective. The waiting period would skirt Congress' intention to combat sex crimes when the purpose of the rule was to clarify legal constraints on the enforcement of the SORNA statute.

The Attorney General's Interim Rule will be upheld because the APA's "good cause" exception was necessary to immediately implement the rule. Protecting potential victims and upholding public safety grossly outweighs the significance of regulatory procedure, and the Attorney General appropriately satisfied the APA's "good cause" exception.

D. SORNA Does Not Violate the Commerce Clause

The Defendant asserts Congress does not have the authority under the Commerce Clause[13] to enact SORNA's criminal penalty and federal failure to register ("FFR") statutes because these laws do not affect interstate commerce. Def.'s Mot. at 21. The Defendant seeks to analogize this case to the holding in United States v. Comstock, which held Congress violated the Commerce Clause in permitting the civil commitment of sex offenders as a part of the Adam Walsh Act because civil commitment was a purely local intrastate activity that had no substantial effect on interstate commerce. 551 F.3d 274 (4th Cir. 2009) (relying on the two seminal Commerce Clause cases: United States v. Lopez, 514 U.S. 549 (1995) (holding that the Gun-Free School Zone exceeded Congress' power under the Commerce Clause), and United States v.

---

[13] Article I, Section 8, Clause 3 of the United States Constitution gives Congress the power "[to regulate Commerce with Foreign Nations, and among the several states, and with the Indian tribes." Since its decision in NLRB v. Jones & Laughlin Steel Corp., the Supreme Court has interpreted the Commerce Clause expansively, with few exceptions, upholding many exertions of legislative authority. 301 U.S. 1 (1937). Further, statutes are presumed constitutional. United States v. Morrison, 529 U.S. 598, 607 (2000). A congressional enactment will only be invalidated on a plain showing that Congress exceeded its authority under the Constitution. Id.

Case 4:08-cr-00034-JLK   Document 32   Filed 06/12/09   Page 15 of 25   Pageid#: 126

<u>Morrison</u>, 529 U.S. 598 (2000) (holding that the civil remedy portion of the Violence Against Women Act exceeded Congress' power under the Commerce Clause)).

The Defendant also cites <u>United States v. Waybright</u>, 561 F. Supp. 2d 1154 -56 (D. Mont. 2008), where the district court of Montana held that § 16913 violates the Commerce Clause under the <u>Lopez</u> and <u>Morrison</u> decisions because, "sex offenders themselves are not necessarily engaged in commercial or economic activity... § 16913 has no express jurisdictional element to limit its reach to sex offenders connected with or affecting interstate commerce." <u>Id.</u> at 1164-65. Basically, the Defendant asks for SORNA and FFR to be struck down under the "substantial affects test."

SORNA does not violate the Commerce Clause. The Defendant has artfully misconstrued and misapplied the holdings in <u>Lopez</u>, <u>Morrison</u> and <u>Comstock</u> when evaluating 18 U.S.C. § 2250, SORNA's criminal penalty statute, and 42 U.S.C. § 16913, SORNA's FFR code section. Both SORNA components, the criminal penalty and the FFR sections, are part of a symbiotic statutory scheme where no criminal penalty can be enforced unless there is a failure to register, and *visa versa*.

Applying the <u>Lopez</u> and <u>Morrison</u> test, Congress properly enacts legislation in three categories: (1) to regulate use of the channels of interstate commerce; (2) "to protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) to regulate activities having a substantial effect on interstate commerce. <u>United States v. Lopez</u>, 514 U.S. 549, 558-559 (1995).

In the instant case, 18 U.S.C. § 2250 provides a jurisdictional nexus, requiring a defendant travel in interstate or foreign commerce. <u>See</u>, 18 U.S.C. § 2250(a)(2)(B). Furthermore,

16

18 U.S.C. § 2250 satisfies the first and second prongs of Lopez in that it regulates "persons or things in interstate commerce" and "the use of channels of interstate commerce." The defendant was undeniably a "person . . . in interstate commerce" in that he traveled and relocated in a different state via the "use of the channels of interstate commerce." "Where a jurisdictional predicate is present in a statute," as in the present case, the "substantial affects test" is inapplicable. United States v. Hinen, 487 F. Supp. 2d 747, 758 (W.D. Va. 2007) (referencing United States v. Williams, 342 F.3d 350, 354-55 (4th Cir. 2003) (holding that the jurisdictional predicate in the Hobbs Act requires only a showing of minimal effect on interstate commerce)). Put simply, when a statute satisfies the first or second prongs of Lopez it is not necessary that the court find the activity has a substantial effect on interstate commerce. United States v. Gil, 297 F.3d 93, 100 (2d Cir. 2002).

In both Morrison and Comstock, the Court concluded the respective statures contained no jurisdictional element nor targeted the channels or the instrumentalities of interstate commerce, and did not substantially affect interstate commerce. See generally, Morrison, 529 U.S. 598; and Comstock, 551 F.3d 274. Although 42 U.S.C. § 16913 does not specifically have a jurisdictional clause, it cannot be viewed divorced from 18 U.S.C. § 2250, like in the Waybright decision, which is on tenuous ground and virtually stands alone. A majority of courts that have addressed this issue have disagreed with the analysis and the approach taken in Waybright.[14] In

---

[14] See, e.g United States v. Howell, 552 F.3d 709, 715 (8th Cir. 2009) (finding the Waybright analysis "unpersuasive"); United States v. Fuller, No. 5:07-CR-462, 2008 WL 5600709 at *5 (N.D.N.Y. Mar. 27, 2008)("SORNA's registration and penalty provisions cannot be viewed separately in this manner."); United States v. Van Buren, Jr., No. 3:08-CR-198, 2008 WL 3414012 at *12 (N.D.N.Y. Aug. 8, 2008)( § 16913 and § 2250(a) are interrelated such that a facial challenge to one part of the SORNA cannot be resolved without resort to the totality of the statute); United States v. Thomas, 534 F.Supp.2d 912, 921 (N.D. Iowa 2008) (concluding that § 16913 does not violate the Commerce Clause) (same).

fact, the District of Montana itself,[15] and every Court of Appeals which has ruled on the issue of whether 42 U.S.C. § 16913 violate the Commerce Clause, has rejected such an argument.[16]

SORNA applies to federal sex offenders and non-federal offenders who travel in interstate commerce. Because SORNA, with FFR, includes a jurisdictional predicate of interstate or foreign travel, there need only be a de minims effect on interstate commerce. Indeed, § 2250(a) combats a problem that defies local solution: the need for a national database of sex offenders in order to protect the public from sex offenders who travel from state to state. Accordingly, SORNA and FFR are constitutional under the Commerce Clause.


E.  SORNA is Not in Violation of the Non-Delegation Doctrine

The Defendant argues Congress abdicated its decision-making authority by giving the Attorney General sole authority, without guidance, to determine whether SORNA was applicable to sex offenders convicted prior to SORNA enactment. Def.'s Mot. at 27-28. Therefore, Congress violated its duty under the Non-Delegation Doctrine[17] when SORNA was enacted. Id.

---

[15] See United States v. Vardaro, 575 F.Supp.3d 1179 (D. Mont. 2008)

[16] See United States v Ambert, 561 F.3d 1202, 1211 (11th Cir. 2009) (when a sex offender travels from one state to another, he is an instrumentality of interstate commerce, and by regulating these persons in SORNA, Congress has acted under its commerce clause power to regulate an instrumentality; Section 2250 and Section 16913 are reasonably adapted to the attainment of a legitimate end under the commerce clause); United States v. Howell, 552 F.3d 709, 715 (8th Cir. 2009) (an analysis of § 16913 under the broad authority granted to Congress through both the commerce clause and the enabling necessary and proper clause reveals the statute is constitutionally authorized."); United States v. May, 535 F.3d 912, 921-22 (8th Cir. 2008) (court distinguishes decisions in Lopez and Morrison, holding SORNA was an appropriate exercise of Congress' power under the Commerce Clause); United States v. Lawrance, 548 F.3d 1329, 1338 (10th Cir. 2008) (although defendant's failure to register was intrastate activity, where SORNA clearly intended to regulate interstate activity, namely, evasion of sex offender registration requirements by sex offenders who had crossed jurisdictional lines, and defendant's failure to register substantially affected interstate commerce); United States v. Hinckley, 550 F.3d 926, 940 (10th Cir. 2008) (by requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA remains well within the constitutional boundaries of the Commerce Clause); United States v. Wrance, 548 F.3d 1329, 1337 (10th Cir. 2008) (SORNA clearly intends to regulate interstate activity, i.e., the evasion of sex offender registration requirements by sex offenders who have crossed jurisdictional lines).

[17] Article I, § 1 of the United States Constitution to provide "that Congress may not constitutionally delegate its legislative power to another branch of Government." Touby v. United States, 500 U.S. 160, 165 (1991).

18

SORNA properly delegates authority in accordance with the Non-Delegation Doctrine and precedence. The Supreme Court held in Mistretta v. United States that a delegation of authority is constitutionally sufficient where Congress has delineated (1) a general policy, (2) the agency to which it applies, and (3) the bounds of the delegated authority. 488 U.S. 362, 373 (1989). Therefore, Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors. Touby v. United States, 500 U.S. 160, 165 (U.S. 1991). Simply put, "Congress cannot do its job absent an ability to delegate power under broad general directives." Mistretta, at 379.

In Mistretta, the Supreme Court applied the intelligible principle standard in reviewing a broad and crucial grant of authority by Congress to the United States Sentencing Commission. The grant of authority in Mistretta involved the discretion to determine the mandatory guideline sentencing ranges applicable to convictions for nearly all federal crimes. Mistretta, 488 U.S. at 377-78. In upholding the conferral of sweeping sentencing authority to the sentencing commission, the Supreme Court explained that Congress, in determining how its policy judgments can best be achieved, is not limited to the "method . . . which involves the least possible delegation of discretion to administrative officers." Id. at 379. In addition, the Court observed that "our jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." Id. at 372. Ultimately, the Court concluded that the relatively open-ended grant of sentencing authority was not an unconstitutional delegation because Congress delineated goals to accompany the delegation. Id. at 374.

The delegation of authority to the Attorney General is particularly appropriate in view of the DOJ's experience and expertise in enforcing SORNA's predecessor statute, Megan's Law, 42 U.S.C. § 14071 (2000). See Gould, 526 F.Supp. 2d at 546 ("Given the DOJ's prior experience with statutes of this kind, [SORNA's directive] is sufficiently intelligible and does not violate the non-delegation doctrine"). One need not look any further than the statute itself for the statute's purpose (protection of the "public from sex offenders" through the establishment of a "comprehensive national system for the registration of [sex] offenders" 42 U.S.C. §1601 ("Declaration of purpose")) or for latitude Congress delegated to the Attorney General.[18] In fact, all courts which have considered the non-delegation argument in connection with constitutional challenges to SORNA have rejected it.[19]

In addition, under the canon of constitutional avoidance, a preponderance standard favors finding that Congress did not impermissibly delegate authority to the Attorney General. See Gonzales v. Carhart, 127 S. Ct. 1610, 1631 (2007) (stating that elementary rules of statutory construction mean that every reasonable interpretation should be used to save a statute from unconstitutionality). Quite simply, the Attorney General was not given absolute authority, and therefore, SORNA should not be read to create such a constitutional concern.

SORNA does not violate the Non-Delegation Doctrine. SORNA meets the Mistretta standards because Congress did not delegate complete authority to the Attorney General by

---

[18] 42 U.S.C. 16913(d) states: "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section."

[19] See United States v. Dixon, 551 F.3d 578, 583-84 (7th Cir. 2008), United States v Ambert, 561 F.3d 1202, 1212-13 (11th Cir. 2009); United States v. Gould, 526 F.Supp.2d 538, 545-46 (D.Md. 2007); United States v. Shenandoah, 572 F.Supp 2d. 566 (M.D. Pa. 2008); United States v. Hinen, 487 F.Supp.2d 747, 751-753 (W.D. Va. 2007) rev'd on other grounds 560 F.3d 222 (4th Cir. 2009); United States v. Madera, 474 F. Supp. 2d 1257, 1261-1262 (M.D. Fla. 2007); United States v. Mason, 510 F. Supp. 2d 923, 927-28 (M.D. Fla. May 22, 2007); and many other unpublished opinions.

clearly articulating an intelligible principle relative to retroactivity as well as the statute's

purpose. In addition, given DOJ's expertise enforcing earlier sex offender registration statutes,

and with sophisticated knowledge of how federal laws are enforced in the federal court system,

the Attorney General is the proper executive officer to write and implement SORNA regulations.

Numerous federal courts have upheld the DOJ's interim rule, and the doctrine of constitutional

avoidance, together with the foregoing reasons, leads me to the conclusion that the Defendant's

non-delegation argument must be rejected.


F.  The FFR of SORNA Does Not Violate the Defendant's Due Process

The Defendant claims he was not on notice as to how he was to comply with SORNA's

initial registration requirement or its federal registration requirements to avoid prosecution,

thereby violating his rights under Due Process. Def.'s Mot. at 30. While I agree, under 42

U.S.C. § 16917 (b),[20] Congress mandated that the Attorney General prescribe rules for the

---

[20] Specifically, it states:  Duty to notify sex offenders of registration requirements and to register

    (a) In general

        An appropriate official shall, shortly before release of the sex offender from custody, or, if the
        sex offender is not in custody, immediately after the sentencing of the sex offender, for the
        offense giving rise to the duty to register--

         (1) inform the sex offender of the duties of a sex offender under this subchapter
        and explain those duties;

        (2) require the sex offender to read and sign a form stating that the duty to register
        has been explained and that the sex offender understands the registration
        requirement; and

        (3) ensure that the sex offender is registered.

    (b) Notification of sex offenders who cannot comply with subsection (a). The Attorney General shall
    prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection
    (a).

42 USCS § 16917

notification of pre-SORNA sexual offenders, nevertheless the Defendant had notice of his registration requirement obligations.

Specific notification is not required by the Due Process Clause. SORNA sets a clear notification standard for jurisdictions, not for convicted sex offenders. SORNA does not require notification prior to, or as a necessary pre-condition for, the enforcement of SORNA. In fact, Section 2250 only requires a knowing failure to register, not a noticed one. "[P]rior knowledge of a duty to register under state law qualified as effective notice under SORNA." Gould, 526 F. Supp. 2d at 544.

In United States v. Samuels, the district court considered and clearly rejected this type of notification argument, stating:

> [This] due process argument misapprehends the notice requirements in SORNA. Although the statute provides that officials give notice, it does not make receipt of notice an element of the offense. The fact that Defendant was unaware that he was allegedly in violation of SORNA by not registering is not an affirmative defense. If failure to have specific knowledge of the particular statute you have been accused of violating were a prerequisite to conviction, there would rarely, if ever, be a conviction. Due process does not require specific notice. . . . To hold specific notice is required under SORNA would add a constitutional requirement where one has never been required.

No. 07-62-DLB, 2008 WL 169792, at *4 (E.D.Ky. Jan. 17, 2008).

The defendant is not afforded by statute to have a government official to tell him he would commit a federal crime if he did not register. In United States v. Ditomasso, the District Court for the District of Rhode Island considered whether Section 2250 was a specific intent crime. No. CR 07-132ML, 2008 WL 1994866, at *7-10 (D.R.I. May 8, 2008). The court found the statute does not require a defendant to "knowingly fail to register or update a registration *with the intent to violate* SORNA." Id. at 8 (emphasis in original).

Regarding constructive notice, the defendant's conduct (failure to update the registration in Virginia prior to moving to North Carolina and also failing to register in North Carolina) post-dates the passage of both 18 U.S.C. § 2250 and the Attorney General's Interim Rule, Therefore, he also had constructive notice of the Act.  See United States v. May, 535 F.3d 912, 921 (8th Cir. 1008) (those already registered as sex offenders when the statute was enacted were "unambiguously" required by subsections (a) and (c) to keep their registrations current).

As of February 28, 2007, the Attorney General's Interim Rule, there is no question the defendant had an obligation to reregister as a sex offender in Virginia under SORNA.  On August 28, 2007, the defendant submitted a signed State Police re-registration form, acknowledging his obligations to update his registration, after which he fled to North Carolina. Therefore, he is properly subject to penalties provided under SORNA based on his conduct as charged, which was well after February 28, 2007.  Even "if [a] defendant was unaware of the law, his ignorance would not excuse him of his requirement to register under SORNA because at the very minimum he knew, or was at least presumed to know, that he was required to register as a sex offender under… [s]tate law."  Talda, at *45 (citing generally May, 535 F.3d at 921).

SORNA does not violate the Defendant's Due Process rights.  Simply put, the defendant is contending SORNA does not apply to him because he was personally unaware of the federal penalties involved.  To uphold this contention would add a constitutional condition never before required.  Not only was he on notice of his obligation to update his registration with Virginia, but he was on notice of the Interim Rule well before the date of his alleged registration violation. The defendant signed a form acknowledging his obligation to update his registration prior to the date of the alleged conduct.  Therefore, the Defendant knew, or was presumed to know, that he was required to register as a sex offender under Virginia law, despite the failure of the Attorney

General to promulgate notification rules.  Lastly, as was expressed previously, SORNA need not have full implementation by the states to be in effect.


G.  SORNA's Application to Offenses Prior to its Enactment Does Not Violate the Ex Post Facto Clause

Lastly, the Defendant asserts that SORNA creates new felony penalties not known or contemplated at the time of the offense, in violation of the Ex Post Facto Clause.  Def.'s Mot. at 32.  Again, this argument misses the mark.

The Ex Post Facto Clause forbids Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to what was then prescribed. Weaver v. Graham, 450 U.S. 24, 28 (1981). A law violates the Ex Post Facto Clause if it is "retrospective… applying to events occurring before its enactment;" and "it must disadvantage the offender affected by it." Id. at 29.

Regarding the retrospective prong of the Weaver analysis, "every element of an offense must occur before the enactment of the statute or, as in this case, when the statute is made available to a defendant.  Talada, at *27 (citing United States v. Mitchell, 209 F.3d 319, 321 (4th Cir. 2000)).  A defendant prosecuted under SORNA, and if convicted, will not be punished for his prior sex offense conviction.  To the contrary, the Defendant is being prosecuted for traveling in interstate commerce and failing to update his registration (second and third elements of a SORNA violation) between October 23, 2007 and April 22, 2008 – events that occurred long after SORNA was enacted and the Interim Rule was published.   Even though the defendant's obligation to register and update his registration as a sex offender following interstate travel is

Case 4:08-cr-00034-JLK   Document 32   Filed 06/12/09   Page 24 of 25   Pageid#: 135

premised upon his prior sex offense conviction (the first element of a SORNA violation), he is not, *ipso facto*, being prosecuted and will not be punished for that conviction.[21]

In this case, it is apparently undisputed that the defendant's interstate travel and failure to register occurred at least 15 months after SORNA was enacted and at least eight months after the interim rule was published. The only relevant event that occurred prior to SORNA's effective date is the defendant's 1998 sex offense conviction. His sex offense conviction, however, merely generated his status as a sex offender and does not form any part of the *actus reus* of his § 2250 violation. The statute only penalizes failing to register or update a registration after July 27, 2006, and the registration requirement itself can validly be given retroactive effect because it is a non-punitive regulatory measure. As such, the defendant's *ex post facto* challenge is rejected.


III.    **CONCLUSION**

For the foregoing reasons and findings, I will **DENY** the Defendant's entire Motion to Dismiss the Indictment [Docket 20].

Entered this 12th day of June, 2009.


s/Jackson L. Kiser
Senior United States District Judge

---

[21] The Seventh, Eighth, and Tenth Circuit all hold that Section 2250 prosecutions do not punish people for prior convictions, but instead, punish them for failing to register after traveling in interstate commerce. See United States v. May, 535 F.3d at 920; and United States v. Lawrance, 548 F.3d 1329, 1338 (10th Cir. 2008); and United States v. Dixon, 551 F.3d 578, 584-587 (7th Cir. 2008). One might analogize with the statute that makes it a crime for a convicted felon to possess a firearm. See 18 U.S.C. 922(g). It is not the prior conviction of the defendant that constitutes the crime, it is his current possession of the firearm.

Case 4:08-cr-00034-JLK   Document 32   Filed 06/12/09   Page 25 of 25   Pageid#: 136